IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

FILED
CLERK

2016 JUN -7 AM 8:37

U.S. DISTRICT
EASTERN DISTRICT
OF NEW YORK

STELLA NICOLOSI,

        Plaintiff,

v.

BRG SPORTS, INC. and EASTON-BELL SPORTS, INC.

        Defendants.

CIVIL ACTION NO.

**CV 16- 2910**

**JURY TRIAL DEMANDED**

JOHNSON, J.

POLLAK, M.J.

## COMPLAINT

### PRELIMINARY STATEMENT

1. This is a claim against the Defendants, BRG Sports, Inc. and Easton-Bell Sports, Inc., for personal injuries sustained by Plaintiff, Stella Nicolosi, by the negligent acts and/or omissions of the Defendants and their respective agents, servants, employees, workmen and/or representatives, as well as under theories of strict liability and breach of warranty resulting from Plaintiff's use of Defendants' product.

### JURISDICTION, PARTIES AND VENUE

2. Jurisdiction is conferred upon this Court by virtue of the parties' diversity of citizenship pursuant to 28 U.S.C. § 1332.

3. The amount in controversy in this action is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and fees.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the acts or omissions giving rise to the within claims occurred within the district and products manufactured



and distributed by the Defendants, including the product that is the subject of this case, are routinely sold within the Eastern District of New York.

5. Plaintiff, Stella Nicolosi is an individual residing therein at 301 81st Street, Brooklyn, New York 11209.

6. Defendant, BRG SPORTS, INC., (hereinafter "BRG"), was and is now a business and corporation with corporate headquarters located at 5550 Scotts Valley Drive, Scotts Valley, CA 95066.

7. Defendant, EASTON-BELL SPORTS, INC.., (hereinafter EASTON-BELL), was and now is a business entity and corporation, with corporate headquarters located at 5550 Scotts Valley Drive, Scotts Valley, CA 95066.

8. At all times relevant hereto, the Defendants acted by and through their respective trustees, directors, agents, servants, employees, workmen and/or other representatives, who were, in turn, acting within the course and scope of their employment, agency and/or service for the same and under the direct control of Defendants.

## STATEMENT OF CLAIMS

9. At all times relevant hereto, Defendants, were regularly engaged in the business of designing, distributing, assembling, installing, marketing, manufacturing, maintaining and/or selling "Bellfit" resistance bands and the component parts thereto, including the subject Bellfit Resistance Band, SKU #3501190107.

10. At all times prior to March 12, 2015, the Defendants either directly or indirectly, through their predecessors-in-interest, subsidiaries and/or successors-in-interest designed, manufactured, assembled, maintained, installed, provided safety recommendations and/or sold the subject Bellfit Resistance Band and its component parts.



11. Defendant BRG bought the resistance band product line from Bell Sports, Inc.

12. Defendant EASTON-BELL bought the resistance band product line from Bell Sports, Inc.

13. Bell Sports, Inc. was a subsidiary of BRG.

14. Bell Sports, Inc. was a subsidiary of EASTON-BELL.

15. Defendant, BRG was a successor-in-interest of Bell Sports, Inc. on March 12, 2015.

16. Defendant, EASTON-BELL was a successor-in-interest of Bell Sports, Inc. on March 12, 2015.

17. Plaintiff purchased a Bellfit Resistance Band, SKU# 3501190107, from a (Modells) retail store location in March, 2012.

18. On or about March 12, 2015, Plaintiff was injured while using the product as instructed for exercise purposes.

19. Specifically, and in compliance with the instructions provided with the product, Plaintiff was exercising when suddenly and unexpectedly, the resistance band dislodged from under the Plaintiff's foot and recoiled towards Plaintiff, causing the hard plastic ball that was attached to the resistance band to strike the Plaintiff violently in the right eye and causing serious and permanent injuries and damages as described herein.

20. As a result of the anchor ball violently striking Plaintiff in the eye, she has sustained serious and permanent injuries including, but not limited to, being rendered permanently blind in her right eye.

3



## STRICT PRODUCTS LIABILITY

21. At all material times hereto, Defendants were manufacturers, suppliers and distributors of the Bellfit Resistance Band.

22. The Bellfit Resistance Band at issue in this suit was designed, manufactured, constructed, marketed and/or distributed by and/or through the agents and/or representatives of the Defendants.

23. The Defendants were regularly engaged in the business of supplying or placing products, like the Bellfit Resistance Band in question, into the stream-of-commerce for use by the consuming public, including the Plaintiff. Further, such conduct was solely for commercial purposes.

24. The Bellfit Resistance Band in question remained unchanged from the time it was originally manufactured, distributed and sold by Defendant until it reached the Plaintiff and ultimately led to Plaintiff's damages. Stated another way, the Bellfit Resistance Band in question was defective and in an unreasonably dangerous condition when it left the hands of the Defendants and remained defective and unreasonably dangerous at all times thereafter until it ultimately caused Plaintiff's damages.

25. At the time the Bellfit Resistance Band in question was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that it would be used by persons such as Plaintiff in the manner and application in which it was being used at the time of the incident made the basis of this suit.

26. With respect to the design of the Bellfit Resistance Band, at the time it left the control of the Defendants, there were safer alternative designs. Specifically, there were alternative designs that, in reasonable probability, would have prevented or significantly reduced

4

the risk of injury to Plaintiff. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of the Defendants by the application of existing or reasonably achievable scientific knowledge.

27. At the time the Bellfit Resistance Band in question left control of Defendants, it was defective and unreasonably dangerous in that it was not adequately designed and marketed to minimize the risk of injury and did not have adequate instructions regarding its use. By way of example and without limitation, the product in question was unreasonably, dangerously defective in the following ways:

    a. The Bellfit Resistance Band was unreasonably, dangerously defective designed with a door anchor ball that could violently strike the user. This makes the resistance band unreasonably, dangerously, defectively designed for its intended and reasonable foreseeable uses;

    b. the Bellfit Resistance Band in question was unreasonably, dangerously, defectively designed in that it was not properly designed to eliminate the risk and dangers associated with the door anchor ball unexpectedly releasing from under the user's foot and striking the user. This made the Bellfit Resistance Band unreasonably, dangerously, defectively designed for its intended and reasonably foreseeable uses;

    c. the Bellfit Resistance Band in question was unreasonably, dangerously, defectively designed in that the anchor ball is too hard and can cause injury if it strikes a user;

    d. the Bellfit Resistance Band in question was unreasonably, dangerously, defective in that it did not contain adequate instructions or warnings on the proper and safe use of the resistance band. Furthermore, the instructions for use are inconsistent and unclear regarding use and whether the anchor ball is removable and/or whether it should be removed when using the resistance band other than in a door frame;

    e. the Bellfit Resistance Band in question was unreasonably, dangerously, defective in that it failed to warn of the risk, nature and extent of danger associated with the anchor ball striking the user. This failure made the resistance band unreasonably, dangerously defective in that the warnings and instructions provided, if any, were not in a form that could reasonably be expected to catch the attention of the reasonably prudent person when engaged in reasonably foreseeable uses.

SMILEY & SMILEY, LLP • ATTORNEYS AT LAW • 122 EAST 42ND STREET, 39TH FLOOR • NEW YORK, NEW YORK 10168 

28.     The above defects in the resistance band were the proximate and producing causes of Plaintiff's serious and permanent injuries and damages.

29.     Plaintiff further contends that Defendants are not entitled to a rebuttal presumption that they are not liable for any injury to Plaintiff caused by the formulation, labeling or design of the Bellfit Resistance Band because they have not established that the resistance band's formulation, labeling and design complied with a mandatory Federal standard or regulation. Additionally, in the event that Defendants do establish compliance with such a regulation or standard, Plaintiff will present evidence that the standard is inadequate to protect the public from unreasonable risks or injury or damage.

## **NEGLIGENCE**

30.     Defendants have a duty to manufacture, distribute and sell products that are not unreasonably dangerous. Defendants, acting by and through their agents and/or representatives, breached this duty and were thereby negligent, careless and reckless in designing, manufacturing, marketing, distributing and selling the Bellfit Resistance Band in question with the defects identified above. As a proximate result of one or more of the aforementioned negligent acts or omissions of Defendants, Plaintiff sustained serious and permanent injuries and damages.

31.     Defendants have a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, quality assurance, quality control, and/or distribution of the Bellfit Resistance Band into the stream-of-commerce, including a duty to warn that the anchor ball on the resistance band could violently strike the user in the face and/or eye during ordinary use.

32. Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, quality assurance, quality control and/or distribution of the Bellfit Resistance Band into interstate commerce in that Defendants knew or should have known that the anchor ball on the resistance band could violently strike the user in the face and/or eye resulting in serious injury to the user.

33. The negligence of the Defendants, their agents, servants, and/or employees includes but is not limited to the following acts or omissions:

    a. Negligently designing the Bellfit Resistance Band in a manner which posed a serious danger to its users;

    b. designing, manufacturing, producing, creating and/or promoting the Bellfit Resistance Band without adequately, sufficiently, or thoroughly testing it;

    c. Defendants knew or should have known that the Bellfit Resistance Band was unsafe and unfit for use by reason of the dangers it posed to its users;

    d. negligently failing to adequately and correctly warn Plaintiff of the dangers associated with the Bellfit Resistance Band;

    e. failing to provide adequate and clear instructions regarding use and safety of the Bellfit Resistance Band;

    f. negligently representing that the Bellfit Resistance Band was safe for its intended use, when, in fact, it was unsafe;

    g. negligently assembling the Bellfit Resistance Band in a manner which was dangerous to its users;

    h. designing the Bellfit Resistance Band with an anchor ball that is too hard and;

    i. failing to accompany their product with proper warnings and instructions.

34. The negligent acts or omissions outlined above were the proximate cause of Plaintiff's damages as described herein.

SMILEY & SMILEY, LLP • ATTORNEYS AT LAW • 122 EAST 42ND STREET, 39TH FLOOR • NEW YORK, NEW YORK 10168 

### BREACH OF WARRANTY

35. At all times relevant to this action, Defendants were merchants in the business of supplying goods to the consuming public. At the time of tender of delivery of the product in question, Defendants made both expressed and implied warranties to the buyer for all persons who would foreseeably use the product. In the present case, they placed a good, the product, into the stream-of-commerce that was defectively designed and marketed for all of the reasons outlined above. In doing so, they breached the warranty of merchantability arising under section 2-314 of the New York State Commercial Code. Specifically, due to the defects identified above, the product was not such as would pass without objection in the trade under the contract description, was not fit for the ordinary purposes for which such goods are used, was not adequately contained, packaged, and labeled as the agreement required, and did not conform to the promises of affirmations of fact made on the container or label. Such breach of warranty was a producing and proximate cause of the injuries and damages suffered by the Plaintiff.

### DAMAGES

36. The unlawful acts and practices described above are and were a producing and proximate cause of STELLA NICOLOSI's serious and permanent injuries, including loss of vision of her right eye. The damages sustained by Plaintiff, include, but are not limited to: physical pain and mental anguish sustained in the past and that will, in reasonable probability, will be sustained in the future; loss of earnings in the past and that, in reasonable probability, will be sustained in the future; disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future; physical impairment sustained in the past and that, in reasonable probability, will be sustained in the future; and medical care in the past and medical care that, in reasonable probability, will be sustained in the future.

**JURY DEMAND**

37.     Plaintiff respectfully requests that a jury be impaneled to decide the factual issues of this case.

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiff have judgment against Defendants, for those damages described above and in the full amounts allowed by law, specifically including, but not limited to:

    a.     A judgment in excess of the jurisdictional limits of this Court;

    b.     pre-judgment interest;

    c.     post-judgment interest;

    d.     costs and expenses; and

    e.     all such other relief, whether at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

By: _____
JASON D. FRIEDMAN (JDF/1265)
SMILEY & SMILEY, LLP
Attorneys for Plaintiff
122 East 42nd Street, Suite 3900
New York, New York 10168
Tel.: 212-986-2022
Fax: 212-697-4689
jfriedman@smileylaw.com



## ATTORNEY'S VERIFICATION

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

JASON D. FRIEDMAN, affirms the following under the penalty of perjury:

That I am the attorney for the plaintiff in the within action; that I have read the foregoing **COMPLAINT** and know the contents thereof; that the same is true of my own knowledge, except matters alleged upon information and belief, and that as to those matters I believe them to be true.

Affirmant further states that the reason this verification is made by deponent and not by the plaintiff is that said plaintiff is not within the County of New York where deponent has his office. The source of affirmant's information and belief is reports and documentation in the file.

Dated: New York, New York
June 1, 2016



JASON D. FRIEDMAN

SMILEY & SMILEY, LLP • ATTORNEYS AT LAW • 122 EAST 42ND STREET, 39TH FLOOR • NEW YORK, NEW YORK 10168